IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID A. CAMPBELL, )
 )
 Plaintiff, )
 )
v. ) Civil Action No. 3:17-cv-407
 )
STONEMOR PARTNERS, LP, )
 )
 Defendant. )

## MEMORANDUM OPINION
(Dismissing Amended Complaint)

This matter comes before the Court on David A. Campbell's ("Plaintiff") Amended Complaint (ECF No. 12),[1] filed on February 12, 2018. For the reasons set forth below, the Court will dismiss Plaintiff's Amended Complaint pursuant to 28 U.S.C. §§ 1406(a) and 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 12(b)(6).

### I. BACKGROUND

To begin, the Court notes that Plaintiff's Amended Complaint is difficult to understand due to inconsistencies in his allegations and a lack of chronological order. The following is the Court's best attempt to construct a coherent narrative from Plaintiff's allegations.

---

[1] Plaintiff's Amended Complaint contains no substantive allegations and makes no reference to the causes of action that he purports to bring. Instead, the Amended Complaint merely removes various individual Defendants from the Complaint (ECF No. 5) that Plaintiff originally filed. Because of the liberal construction that is afforded to *pro se* litigants, *see Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006), the Court will construe Plaintiff's Amended Complaint as incorporating the substantive claims raised by his original Complaint. Accordingly, the Court will refer to Plaintiff's Complaint, and not his Amended Complaint, as the former contains all the relevant allegations.

Plaintiff was employed by Defendant StoneMor Partners L.P. ("Defendant") as a cemetery manager. (Compl. 8–9.) In February 2014, Plaintiff returned to work from a five-week absence due to double pneumonia. (*Id.* at 8.) On March 24, 2014, Plaintiff started managing Oaklawn Mausoleum and Memory Gardens ("Oaklawn") after management required him to transfer there. (*Id.*) During his tenure there, Plaintiff's office consistently received high ratings. (*Id.* at 9.) Despite being older and more experienced, Plaintiff was compensated at a $7.25 hourly rate, not the $455 weekly rate given to other managers. (*Id.*) Plaintiff made inquiries about his compensation and ultimately sent a letter inquiring about his job description and title. (*Id.*) Human Resources initially told him that he was a family services consultant but later told him he was an assistant manager. (*Id.*) Plaintiff continued to ask about his compensation and began receiving phone calls before and after working inquiring about his game plan for the work week. (*Id.* at 9–10.) In September 2015, Plaintiff's administrator informed him that he would be compensated at the $455 weekly rate. (*Id.* at 10.)

On December 1, 2015, Plaintiff scheduled a telephone call with Area Manager Anita Deeb, related to a misunderstanding Plaintiff had with his assistant. (*Id.* at 2, 10.) When the call ultimately took place, Regional Vice President Pamela Harris was on the line with Deeb, which Plaintiff found to be "very unwelcome" and led him to attempt to end the conversation by saying that "he had to see his Doctor in a little while." (*Id.* at 10.) Plaintiff alleges that Harris replied: "Dave you always get sick when you get mad." (*Id.*) Plaintiff ended the phone call, and at some point later that evening sent a text

message complaining about the call, because it was "harassing" and "not called for." (*Id.*)

On December 2, 2015, Plaintiff was informed by Harris and Human Resources Compliance Manager Lauren Bailey that he was being placed on leave pursuant to the Family Medical Leave Act. (*Id.* at 2, 10.) Plaintiff alleges that he heard Harris say that he would have "plenty of time to think about that text." (*Id.* at 12.) Plaintiff was not permitted to return to work the following day. (*Id.*) This experience caused Plaintiff to become very ill, and he obtained notes from his doctor stating that he could not work until March 31, 2016. (*Id.* at 13.) Despite Defendant excusing Plaintiff's absence from work through that date, it terminated his employment on March 24, 2016. (*Id.*)

## II. STANDARD OF REVIEW

The statute governing IFP filings provides that "the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); *see also Michau v. Charleston Cty*, 434 F.3d 725, 728 (4th Cir. 2006) ("28 U.S.C. § 1915(e) . . . governs IFP filings in addition to complaints filed by prisoners . . . ."). Section 1915(e)(2) "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Therefore, the Court must screen all IFP complaints to ensure judicial economy.

3

When determining whether an action is "frivolous," the Fourth Circuit has observed that "[t]he word . . . is inherently elastic and 'not susceptible to categorical definition.'" *Nagy v. FMC Butner*, 376 F.3d 252, 256 (4th Cir. 2004) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). "It is designed to confer on district courts the power to sift out claims that Congress found not to warrant extended judicial treatment under the in forma pauperis statute." *Id.* "The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." *Id.* at 257. "[D]istrict courts are at liberty to consider any factors that experience teaches bear on the question of frivolity." *Id.*

When assessing whether an IFP complaint "fails to state a claim on which relief may be granted," courts conduct a similar analysis to that used when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). When considering an IFP filing, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, the Court acknowledges that *pro se* complaints are afforded a liberal construction. *Laber*, 438 F.3d at 413 n.3. The Court, however, need not attempt "to

discern the unexpressed intent of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390–91 (4th Cir. 1990). As the Fourth Circuit explained in *Beaudett v. City of Hampton,* while "[*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

### III. DISCUSSION

Plaintiff identifies retaliation and the termination of his employment as the discriminatory conduct giving rise to his claims. At various points in the Complaint, he states the Court's basis of jurisdiction as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* (*Compare* ECF No. 5 at 3 (citing Title VII and the EPA) *with* ECF No. 5 at 7 (citing Title VII, the ADEA, and ADA)). In line with the latitude given to *pro se* litigants, the Court will interpret the Complaint as broadly as possible without taking on the role of advocate. Accordingly, the Court will view Plaintiff as asserting claims for retaliation and wrongful termination under Title VII, the EPA, the ADEA, and the ADA.

### 1. VENUE

Venue is proper in the Eastern District of Virginia for Plaintiff's claims under Title VII and the ADA. The enforcement provisions of Title VII, which are incorporated

5

into the ADA, provide that "an action may be brought in *any* judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3) (emphasis added); *see* 42 U.S.C. § 12117(a) (incorporating § 2000e-5). In this case, the relevant employment actions occurred while Plaintiff was employed at Oaklawn in Staunton, Virginia. Thus, while these actions did not occur in this District, they did occur in the Commonwealth of Virginia. Accordingly, Plaintiff has properly laid venue for these claims in this District.

Plaintiff's claims under the EPA and ADEA, however, are governed by the general venue provision of 28 U.S.C. § 1391 and therefore cannot be brought in this District. Pursuant to § 1391(b), Plaintiff can bring these claims in the judicial district where the defendant resides, the judicial district where the events giving rise to his claim occurred, or, if no other district exists where the action could be brought, in any judicial district where the defendant would be subject to the court's personal jurisdiction. Here, Defendant's return address indicates that he lives in Staunton, Virginia, which as described above is where the relevant employment actions occurred. Staunton is located in the Western District of Virginia, and therefore venue is proper in that district under the general venue provision.

While typically venue must be established for each claim, courts have discretion to exercise "pendent venue" when the claims asserted by a plaintiff "amount to a single cause of action with two grounds for relief." *Lengacher v. Reno*, 75 F. Supp. 2d 515, 518 (E.D. Va. 1999). To the extent that they exist in his Complaint, the allegations Plaintiff would use to support his claims under the EPA and the ADEA are distinct from those

6

relevant to his claims under Title VII and the ADA. Thus, these claims must be understood as separate causes of action. Consequently, it would be inappropriate for this Court to exercise pendent venue.

For these reasons, Plaintiff's claims under the EPA and the ADEA cannot be brought in this district. Given the dearth of allegations supporting Plaintiff's claims under these statutes, the Court does not find that it is in the interest of justice to transfer these claims to the Western District of Virginia. *See* 28 U.S.C. § 1406(a). Accordingly, Plaintiff's claims under the EPA and the ADEA will instead be dismissed without prejudice to his refiling them in an appropriate forum.

## 2. FAILURE TO STATE A CLAIM

Plaintiff's Complaint fails to state a plausible claim for relief under Title VII. Title VII protects against employment discrimination and retaliation related to race, color, religion, sex, or national origin. *See generally* 42 U.S.C. § 2000e, *et seq.* Plainly put, Plaintiff does not allege—and nothing in the Complaint suggests—that Defendant took any action against him based in whole or in part on any of the aforementioned classifications. As such, his claims under Title VII will be dismissed without prejudice.

Plaintiff's Complaint is similarly deficient with regard to his claims under the ADA. "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*,

216 F.3d 373, 377 (4th Cir. 2000)). Specifically, the plaintiff's disability must be a but-for cause of the plaintiff's discharge. *See Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 236 (4th Cir. 2016). "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Importantly, this retaliation provision only protects against retaliation that is based upon the fact that the plaintiff "opposed any act or practice made unlawful by [the ADA]" or "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a); *Reynolds*, 701 F.3d at 154.

Plaintiff's Complaint meanders through a host of grievances against his former employer that do not appear to be tethered to any activity or trait that is protected by the ADA. The Complaint provides very limited information about the illness Plaintiff suffered from and only makes passing references to the documents he attached. To discern whether or not Plaintiff qualifies as "disabled" within the meaning of the ADA, the Court would be required to scour through Plaintiff's attachments in an attempt to cobble together the facts that could support such a finding. This Court is neither inclined nor empowered to transform itself into an advocate on Plaintiff's behalf.

Plaintiff also fails to allege, even in a conclusory fashion, that Defendant terminated him due to his medical problems. With the exception of the fact that Plaintiff checked a box on the Pro Se Complaint for Employment Discrimination form, there is no

indication in the Complaint that Plaintiff's medical problems were at all related to his termination. In fact, the sole relevant information provided about Plaintiff's termination is that it occurred a week before he was set to return from multiple months on FMLA leave. Further, the only allegation that remotely links Defendant to a negative view of Plaintiff's health was Regional Vice President Bailey's statement: "Dave you always get sick when you get mad." This comment not only came before the onset of the illness Plaintiff claims as his disability but also pre-dated his termination by nearly four months.

Similarly, Plaintiff fails to provide sufficient information showing that he engaged in protected activity necessary to state a claim for retaliation under the ADA. In essence, Plaintiff claims that in response to a text message he sent complaining about a contentious phone call with the regional vice president, Defendant retaliated against him by requiring him to go on leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*.[2] From the limited information provided about these incidents in the Complaint, there is no indication that these communications amount to protected activity.

Accordingly, Plaintiff's claims under the ADA will be dismissed without prejudice.

---

[2] The Court does not construe Plaintiff's Complaint as asserting a claim under the FMLA. To the extent that Plaintiff is attempting to bring an FMLA claim, venue is not proper in this District, see 29 U.S.C. § 1391(b), and such a claim therefore would be denied alongside Plaintiff's EPA and ADEA claims.

## IV. CONCLUSION

For these reasons, Plaintiff's Amended Complaint (ECF No. 12) will be dismissed without prejudice pursuant to 28 U.S.C. §§ 1406(a) and 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 12(b)(6).

Should Plaintiff wish to appeal, written notice of appeal must be filed with the Clerk of Court within thirty (30) days of the date of entry hereof. Failure to file a notice of appeal within that period may result in the loss of the right of appeal.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 19, 2018
Richmond, Virginia